Thank you, Your Honor. John Jackson for Conservation Force. The Conservation Force stands for the sportsmen of America who have been the foremost conservationists for over 100 years in America and in Canada. We represent the appellants in this case, Your Honor, which are intervenors in the polar bear listing suit. The issue is the grace period at the time that the threatened listing determination is made. What the trial court did was it ordered... Well, that's the issue you want to argue, but the issue that you were granted permission to intervene for was the issue of whether under the Endangered Species Act relief could be granted to these private citizens or that the defendants could be made to let them bring their trophies in. That's a little different. Well, there's several ways to look at it, Your Honor. First, the Endangered Species Act itself actually exempts threatened listed species that are appendix 2 of CITES as the polar bear. What happens is it triggers the Marine Mammal Protection Act. It treats them as depleted. Now, the issue is not so much that the fact that the bear was listed and that it had to be done by a certain date, which is a mandatory date. Our issue follows that. The court went beyond that order and issued an order that we take as beyond the court's jurisdiction, which was ultra-virus. The APA substituted its judgment for that of the administrative agency and determined that the listing should be made effective immediately. But how do you have standing to appeal that order if you were not a party at the time that order was entered? We were a pending intervener at the time. What case authority allows a pending intervener to challenge a ruling that was made before intervention was granted? Well, that's why we rely upon five separate causes of action, Your Honor. Well, but just answer that one question. What case authority do you have that allows a pending intervener to challenge a ruling that was made before intervention was granted? If all else fails, Your Honor, we've cited the case in the brief, if all else fails, it's the U.S. Constitution, Your Honor. The due process, the right to a hearing, the right to a fair treatment, fundamental fairness requires the 60 hunters that took, up to 60 hunters that had invested $2.4 million in the conservation of the Canadian polar bear, their right to a fair hearing, to a determination, an evidentiary hearing, which they didn't get. And that's one of the arguments that they'll... that the species might be listed and, therefore, they took the game, you know, on a gamble that they would be allowed to import it. That, too, is an issue, Your Honor. What happens here, the lawsuit that was filed was based upon the citizen suit provisions that there was a mandatory requirement that a listing be by a certain date. It's not under the Endangered Species Act that there's a minimum of a 30-day notice. So the court went beyond the pleadings. There was also no plea in the pleadings or the amended petition asking for the judgment of the listing to be made effective immediately. So all of this is outside of the pleadings. The minute we learned that there was a motion for summary judgment, it was filed, while our petition to intervene was pending, within 13 days we filed a petition to intervene, and that was pending and was scheduled when the court decided on its own that they knew better. And that prior to these hundreds of their hearing, their opportunity to intervene. Then we filed a petition for reconsideration. The court granted that. So that gave us another opportunity, but the court only granted it in part, never intended to give us a reconsideration of the issue, which was the court's decision outside and beyond what was really a discretionary area for an administrative agency. Mr. Jackson, sometimes it creates a problem for lawyers that we decide the case on the record. How do you know what they knew at the time? Are you making an argument that is not supported in this record? No, Your Honor. Everything I'm saying is a matter of record. Nothing that I'm saying. In other words, their motivation? I missed the point. Maybe I missed what you said. Go ahead. In answer to the judge's question, the court decided to dispose of the hearing, the intervention, and decided to go beyond what was prayed for in the petition, but what it was asked for in the motion for summary judgment. But that motion for summary judgment was set for hearing, and the court didn't wait for the hearing. The court didn't instead deny the motion for intervention as moot. She was the one that mooted it. She was the one that just decided that those that paid for the conservation in Canada weren't entitled to their property rights. Well, counsel, wasn't there a proposed order that was published in January of 2007? A proposed order, Your Honor. The law is very clear that a proposed order is not good cause for waiving the 30-day. No, but what I'm saying is that at least put the hunters on notice that there was a potential for the rules to be changed and for the species to be listed as threatened. The hunters also had notice that the statutory law of the United States is that they have a minimum of 30 days' notice before it's made effective. These hunters are all pre-booked to hunt. Does your notice also that that period may be waived? Well, good cause is shown, Your Honor, and a good cause is something that the administrative agency has to find. In this case, the administrative agency, there should be shown deference, actually found there was no urgent circumstances. The bear was being listed because of projections 50 years in advance. These bears were taken from specifically approved programs. They were part of the Congress that approved, the U.S. Fish and Wildlife Service approved, part of the Management Program of Canada. There was no urgent circumstances that justified the so-called good cause, and the court had no jurisdiction to make that determination. What about the fact that the listing had been delayed for a number of years despite requests? There's no question that everybody was prejudiced by the delay, and that it was a mandatory requirement. That wasn't disputed. In fact, the Fish and Wildlife Service came in. The defendants came in and admitted that. So that was not the issue, and we're not here arguing about that, Your Honor. We're arguing about what the court did outside of its jurisdiction. The district court found that there was good cause because any further delay in listing the polar bears would deprive them of the protections under the ESA in view of a proposed rule that would allow lease or leases in their habitat. There's ten reasons I was mistaken, Your Honor. One, foremost, this is a motion for summary judgment. That was a disputed fact in the service. The court said, no, the burden's on the service. They haven't proven that it's not good cause. She reversed the rule Congress intended, and she usurped the power of the administrative agency. She wasn't reviewing what they had determined. She was overruling it before it was made prematurely, before the bear was lifted. If there's no further questions, I'll reserve the rest of my time. All right. Thank you, counsel. Thank you. May it please the court. I am David Shilton. I'm here representing the Fish and Wildlife Service. I plan to take about seven and a half minutes, and I will only be speaking about the jurisdictional issue. Ms. Pardee for Center for Biological Diversity will take the rest of the time, and she'll speak about the merits. What Conservation Force seeks to appeal here is the district court's April 28, 2007, ruling making the listing immediately effective. Members of that organization at Edmund Hope used that 30-day period to finalize the permitting process, because once the threatened designation becomes effective, then the permitting window closes because under the terms of the Marine Mammal Protection Act, you cannot import a depleted species, and a species that's been listed as threatened is a depleted species. The problem is there are two independent jurisdictional barriers to Conservation Force appealing from that immediately effective order. And the first is that the April 28 order also denied Conservation Force's motion to intervene. Conservation Force elected to renew its request for intervention, and in response the district court granted it limited intervention on May 12, 2008, not on the already decided issue of making the listing immediately effective, but on the different issue of whether there's some way under the Endangered Species Act that might authorize a service to allow the importation of these pre-listing trophies. The May 12 order is very clear that the scope of limited intervention did not extend to the issues that had been decided, including the immediately effective issue. So Conservation Force's contention that that issue was somehow left open is simply incorrect. An intervener lacks standing to raise issues that are beyond the scope of a grant of limited intervention. We've cited a case from the D.C. Circuit, United States versus British American Tobacco, for that. And the issue here of whether it was proper for the district court to order the threatened listing immediately effective was clearly beyond the scope of the limited intervention, nor may a party bring an interlocutory appeal from the grant of limited intervention. There are several Ninth Circuit cases on that that we've cited, including Churchill County versus Babbitt. Counsel, I know that you did not intend to address the merits of the case, but the service does not challenge the district court's discretion to, as part of its ability to fashion equitable relief, waive the 30-day notice period. Does the service challenge the court's ability to take that action? We've not taken a position on that in this court, Your Honor. We think that that's a difficult issue that shouldn't be reached unless the court is quite sure that it has jurisdiction. It's certainly the case that district courts have wide discretion in crafting remedial orders. We took the position below that it wasn't necessary to make it immediately effective. The court ruled otherwise. The threatened ruling went into place immediately. What's done has been done, I think, is our position now. And this whole litigation has moved on. It's now in the District of Columbia to somehow lift it now would threaten, I think, some chaos. Settled expectations. Indeed, indeed. People have relied on that. But our main contention here is that there's simply no jurisdiction over this appeal, and we think the case should be decided on that narrow basis. The other jurisdictional problem, of course, is just the timing issue, and that is that the notice of appeal was not filed within 60 days of the April 28th ruling, interlocutory ruling, saying that the listing should be immediately effective. Conservation, of course, is contending that its notice of appeal was timely as to the district court's July 11th, 2008, ruling. And that's correct. It was timely as to that ruling. But that July 11th ruling was an interlocutory ruling itself on the fact that the Endangered Species Act doesn't permit the service to allow the importation. And as an interlocutory ruling, it does not merge all of the earlier rulings like a final judgment would. And that is made clear in the case of Hook v. Arizona Department of Corrections. Conservation Force itself relies on the Hook case. But, in fact, if you look at that case, what the court was there considering was a post-judgment content order and found that that sort of order is a final order appealable under 28 U.S.C. 1291. And as such, that order merged earlier interlocutory orders. But the July 11th order in this case was not a final order under any possible theory and therefore did not merge the earlier April 28th order. And there was no timely notice of appeal with regard to that April 28th order. So for both of those reasons, I think that there is simply no appellate jurisdiction. Now, it may be possible for Conservation Force to appeal the July 11th order itself, perhaps under a theory that pursuant to 28 U.S.C. 1292 A.1, it was somehow the denial of interlocutory injunctive relief. But Conservation Force's opening brief did not make any arguments challenging the July 11th ruling and therefore that issue is waived. So, as we noted in our brief and as noted in the recent 28-J letter from the Center for Biological Diversity, Conservation Force is pursuing other claims regarding the polar bear trophies in the District of Columbia, where this case and other cases relating to the polar bear have been consolidated. And I think its remedy, if any, is probably there. But this Court is not the proper forum for considering this controversy as it lacks appellate jurisdiction over the immediate effect ruling. All right. Thank you, Counsel. Thank you. Your Honor, good morning. I'm Vera Pardee. I'm here on behalf of the Center for Biological Diversity. We agree with the Department's position that this Court does not have to reach the merits of this case, in fact should not, and that the questions raised by appellant are not properly before the Court. However, if the Court wishes to address the merits, I would like to address the fact that the 30-day's notice never really made any difference. Having it or not having it never made any difference to appellants in this case. I would like to address the fact that the District Court did not abuse its discretion. Counsel, before you go there, why is it that you argue that the 30-day notice did not make a difference? Because of the timing, Your Honor. The appellants had noticed that the listing was going to be forthcoming, and they knew that as early as January 2007. In that proposed rule in 2007, there was very clear warning given to appellants that if a species was taken and it was declared listed, then under the Marine Mammals Protection Act, it could not be imported as a depleted species. But opposing counsel's argument is if the 30 days hadn't been waived, that would have given them the opportunity to import their trophies prior to the rule becoming effective. What's your response to that? Yes, Your Honor. There is a crucial fact in appellant's brief that appellant has admitted, which is that it takes four or more months, according to appellant, to complete the importation process. So assuming a bear was killed in the spring of 2008, which is what the record reflects, spring or April 2008, and it would take up to four months or more to complete the importation process, and the listing became effective in May, even a 30-day additional period would have made no difference. So the equities just don't show that there was harm that came to appellant because of a lack of notice. In fact, what appellant sought was not notice. They sought delay of the implementation of the listing so that all trophies hunted could be imported. Your Honor has asked whether there is law that supports the district court's decision to waive the notice period. Good Cause, of course, is recognized under APA as a reason for waiving post-listing notice. But that reference is back to the agency, though, not to the district court. So what's your response to opposing counsel's position that the language in the APA rendered or the regulation rendered the decision of the district court ultra-virus? It's twofold, Your Honor. First, the agency did make a decision here. The agency, as you heard and as the record reflects, did oppose the waiving of the notice provision, but it did take a position. So it's just not true that the court usurped a function without letting the agency speak on it. The agency did speak on the issue. Second, then, the question, once the agency has spoken, did the court have jurisdiction or was it entitled to overrule that position of the agency? And the answer to that, we submit, is clearly yes. There is a case on point, which is Marble Murlet v. Lujan, in which the district court did exactly the same thing and waived a 30-day notice provision even though the agency was opposing it. And the district court found Good Cause to exist for that, in part because the violation had already continued for quite a long period of time. The equitable powers of the district court under the ESA are very broad, and they always tip very sharply in favor of an endangered species. So there also was no specific statute that prohibited the district court from waiving this notice. In fact, this has been done many times by the agency itself, and the 30-day notice under this Act is one of the most easily waived notice provisions. I do want to address also the question of the equities before the district court when that decision was made. And Appellant contends that the question of harm was disputed, but that is just simply not so. The question was, in summary judgment, should the 30-day notice provision be waived? And the harm that would come from a lack of waiver was supported by the evidence, and that evidence was undisputed. It consisted of the fact that the Secretary had found the kola bear to be threatened more than a year ago. It consisted of the fact that by the time the summary judgment motion was heard in April, that decision had already been delayed illegally by 120 days. It consisted of the fact that the protections that the kola bear does enjoy under the MMPA are less comprehensive than those available under the ESA. And then there was one additional undisputed fact, which was that there was an imposed rule on the books that was about to withdraw the protections, the less comprehensive protections under the MMPA for the kola bear. So without the decision by the district court to waive the notice rule, even that limited protection or less comprehensive protection could have been withdrawn. Counsel, the case you relied upon, Marlette v. Lujan, that's a district court case, right? You realize that's not precedential? I do. So you're asking us to adopt the reasoning of that decision? Absolutely. Are you aware of an appellate court decision? No, no, no, I'm not. Definitely not. But the executive powers are indeed broad, and there is no prohibition against it. Let me ask you something about the polar bears. Apparently, there are too many of them in Canada, and they've granted permits to kill polar bears, hunters. But in the United States, the polar bear is on the endangered species list. So what we're concerned with here is the protection that's being afforded by the United States, even though in Canada, where they were taken, there are too many of them. Is that right? Your Honor, I don't have knowledge about whether there are too many in Canada. Well, that's probably a poor state. In fact, I would doubt that, that there are too many polar bears. But you're correct. In Canada, the law does permit the hunting of polar bears. What is not allowed in the United States is the importation under the MMPA of the species that has been declared depleted. And the polar bear became depleted under the MMPA as soon as it was listed here as threatened. Would you say that again? As soon as what? Yes, sir. The MMPA, Marine Protection Act, says you may not import any part of any species that is declared to be depleted. You may not do that. Depletion occurs automatically as soon as a species is listed as threatened or endangered under the endangered species. So as soon as that happened, importation became illegal. What Appellant is really asking this Court to do is to jump into an area that was not open for the District Court's jurisdiction, only that very question. That was never before the Court. Unless there are any other questions, I'm already in the red. All right. Thank you, Counsel. Rebuttal. If you'll permit me, I'll address a couple of issues that we've crossed here that haven't been directly addressed. Our position, Your Honor, is that the lawsuit against the Service to compel a final determination was under the citizen's supervision of the endangered species. Mr. Jackson, your opponents are not going to be able to rebut. So you want to rebut. Yes. You don't want to make a new argument at this point. I am rebutting. Maybe I misled you on that. Instead of confuse the issue, let me address the specific points. The intervention was limited, but it wasn't clearly limited. It was confusing to us. We were trying to give the trial court an opportunity to correct its own mistake, and there's no question about that. But the trial court didn't think it had made a mistake. That was the point of dispute. It took it two months of examining everything but the issue that we had before it in our request for reconsideration to say that the court said she never intended to address that issue. We've known that. We might have taken a writ of mandamus. We did start to take an appeal when we got notice that she was going to reconsider her decision. And we had asked for a stay, and the court denied that. So right on the heels of that, we get notice that she's going to reconsider it. So what were we to do? Now, the defendants have argued, well, it was premature because it was interlocutory, and now they're before the court arguing that it was interlocutory, therefore the appeal time is run. Now, which way you go, what it really comes down to is the due process rights of these people that have, in good faith, relied upon an act of Congress, approval by the Fish and Wildlife Service for these specific areas, and the World Conservation Union calls it conservation hunting, and they had contracted years in advance. Some of those people could have got their money back if the secretary, and this is all in the pleadings, if the secretary had made the determination timely. But, counsel, don't you have the opportunity to make these arguments in the MDL litigation in D.C.? No, Your Honor, that's a problem. That's why we went through trial court in the first place. After that, it spirals. There's two acts in Congress, one in the Senate and one in the House, 50-60, barely. There's litigation that the act doesn't really trigger, and the legal fiction that is completed when it's not going to be for 50 years, that this is all illegal. But that's contrary to the position of the Fish and Wildlife Service. And we have a deference. There's another suit where there's one rare possibility. It's never been exercised that marine mammals could be imported in cases of enhancement, but the Marine Mammal Commission has always taken the position harvest is not enhancement no matter what, unconditionally. The service has denied those permits. So all these spiraling things because of the judge's error are all unlikely and improbable. What's your response to opposing counsel's observation that even if there had been a 30-day notice period, it would not have helped your clients because the time to import is the minimum of four months? The service expedited it normally as four months. Some of these permits were taken in February and March and April. The service expedited it so it was now taking 30 days, 40 days. One requirement was mandatory. It had to be published in the Federal Register for 30 days for public comment. So while it was taking away these people's 30-day entitlement to notice under the APA, the Fish and Wildlife Service was enforcing another 30-day notice requiring their permits to take 30 days longer. Your Honor, most of these could have come in if the judge had allowed the 30 days. But the 30 days is the minimum. The service has specifically said on the record that it was likely to and allowed whatever time was necessary to get these polar bears in. These were people that paid for the conservation. They relied upon everything to their disadvantage. He's a dead bear. It hurts nobody to allow them in. Thank you, Your Honor. Thank you. Thank you to both counsel. The case just argued is submitted for a decision by the court. The next case on calendar for argument is Caltech.
judges: Farris, Thompson, Rawlinson